[No. A124221. First Dist., Div. Four. Feb. 11, 2010.]

CALIFORNIA CORRECTIONAL PEACE OFFICERS' ASSOCIATION
et al., Plaintiffs and Appellants, v.
STATE OF CALIFORNIA et al., Defendants and Respondents.

1456

---

COUNSEL

Carroll, Burdick & McDonough, Gregg McLean Adam, Gonzalo C. Martinez; and Daniel M. Lindsay for Plaintiffs and Appellants.

K. William Curtis, Warren C. Stracener, Linda A. Mayhew and Christopher E. Thomas for Defendants and Respondents.

---

## OPINION

**RUVOLO, P. J.**—The California Correctional Peace Officers' Association (CCPOA) brings a statutory claim, contending that the State of California (the State), through the Department of Personnel Administration (DPA), violated Government Code section 19849.18[1] when DPA refused to grant correctional supervisors of State Bargaining Unit Six (Unit 6) the same increases granted to the rank-and-file correctional officers they supervise. We disagree, and affirm.

## FACTS AND PROCEDURAL HISTORY

CCPOA represents certain correctional supervisors of Unit 6 along with a large number of rank-and-file correctional employees (hereafter sometimes also referred to as the rank-and-file members). This appeal is brought on behalf of the organization and the correctional supervisors of Unit 6 (supervisors or correctional supervisors) it represents.

DPA is the agency charged with setting compensation for both the supervisory correctional officers and the rank-and-file correctional officers of Unit 6. (§ 19826, subd. (a); *Tirapelle v. Davis* (1993) 20 Cal.App.4th 1317, 1322–1323 & fn. 8, 1325–1326 [26 Cal.Rptr.2d 666] (*Tirapelle*); §§ 3513, subd. (j), 19815.4, subd. (g).)

---

[1] All subsequent undesignated statutory references are to the Government Code.

In May, August and September 2006, CCPOA and DPA arbitrated a contractual dispute relating to compensation for the rank-and-file members. In November 2006, the arbitrator found that the State had underpaid the rank-and-file members. The arbitrator issued a supplemental opinion and award in January 2007. As a result of these arbitration awards (collectively, the Cohn Award), DPA was required to grant the rank-and-file members of Unit 6 a 3.125 percent base pay increase, retroactive to July 1, 2005. The Cohn Award also required DPA to increase health benefits for the rank-and-file members of Unit 6 to an 85/80[2] formula based on 2006 health insurance rates.

Pursuant to section 3533, in February and March of 2007, DPA met and conferred with CCPOA on behalf of the supervisors it represents regarding the impact of the Cohn Award on correctional supervisors. CCPOA's position was that section 19849.18 required that supervisors be given automatic and contemporaneous base pay and health benefit increases "generally equivalent" to those included in the Cohn Award.

As a result of these discussions, DPA agreed to grant correctional supervisors a prospective 3.125 percent base pay increase effective January 1, 2007, but declined to grant additional health benefits or to make the 3.125 percent base pay increase in accordance with the terms of the Cohn Award. DPA disagreed with CCPOA's position that section 19849.18 requires supervisors be given "generally equivalent" compensation changes each and every time salary or benefit awards are granted to rank-and-file members, and posited that its 3.125 percent base pay increase, coupled with the overall salary and benefits differential, satisfied its statutory obligations.

During these meet and confer sessions, DPA supported its decision by presenting statistical charts showing that, even after considering the Cohn Award, supervisors still enjoyed an 11.45 percent differential in salary and benefits over the rank-and-file members. These charts also depicted historical salary and benefits information, illustrating that a significant salary and benefits differential between supervisors and the rank-and-file members had existed since at least 2002–2003, and that supervisors had enjoyed a 5.94 percent advantage over the rank-and-file members in the area of health benefits from 2004 to 2007.

In April 2007, CCPOA filed a formal grievance with DPA challenging its decision on the same grounds. In its grievance denial, DPA reiterated that the 3.125 percent base pay increase, along with the current substantial salary and benefits differential of 11.45 percent, satisfied its statutory obligations.

---

[2] According to the record before us, 85/80 is a health care formula whereby the State pays 85 percent of the average health insurance premium for the employee, and 80 percent for dependants of that employee.

In June 2007, CCPOA filed a complaint in the above captioned matter. The trial court ruled in favor of DPA (the State) and issued a written statement of decision dismissing CCPOA's claim in its entirety. In dismissing the statutory cause of action, the trial court concluded that section 19849.18 did not require that supervisors be given contemporaneous compensation changes each and every time compensation changes were granted to rank-and-file members. The trial court further found that CCPOA's interpretation of that section was "unreasonable, and not supported by the plain language of the statute, the legislative history, or other legal authorities." The court reasoned that when "an adequate pay differential already exists between correctional supervisors and the [rank-and-file members], DPA should not be compelled to further expand that differential in the absence of any justification." In support of its ruling, the court found that the statistical data and charts submitted by DPA satisfied its obligation to maintain compensation differentials between supervisors and the rank-and-file members, therefore fulfilling the overall purpose behind sections 19849.18 and 19849.22.

This appeal followed.

## DISCUSSION

### A. Standard of Review

■ Setting compensation for public employees is a legislative function. (*Wirth v. State of California* (2006) 142 Cal.App.4th 131, 138 [47 Cal.Rptr.3d 623] (*Wirth*), citing *Lowe v. California Resources Agency* (1991) 1 Cal.App.4th 1140, 1151 [2 Cal.Rptr.2d 558].) In the case of correctional supervisory employees, the Legislature has delegated that responsibility to DPA.[3] (*Wirth*, at p. 138, citing § 19826, subd. (a) and *Tirapelle, supra*, 20 Cal.App.4th at pp. 1322–1323, fn. 8.) As a result, DPA's decision whether to adjust supervisory salary and benefits constitutes a quasi-legislative decision. (*Wirth*, at p. 138.)

Pursuant to Code of Civil Procedure section 1085, review of quasi-legislative actions " ' " ' "is limited to an inquiry into whether the action was arbitrary, capricious or entirely lacking in evidentiary support, . . ." ' ' . . . [and] [t]he petitioner has the burden of proof to show that the decision is unreasonable or invalid as a matter of law." ' (*City of Arcadia v. State Water Resources Control Bd.* (2006) 135 Cal.App.4th 1392, 1409 [38 Cal.Rptr.3d

---

[3] In 1981, the Legislature delegated the function of salary setting for supervisory employees to DPA. (*Tirapelle, supra*, 20 Cal.App.4th at pp. 1322–1323 & fn. 8, 1325–1326.) Section 19826, subdivision (a) provides that DPA "shall establish and adjust salary ranges" for employees excluded from coverage under section 3512 et seq. (the Ralph C. Dills Act).

373], quoting *Citizens for Improved Sorrento Access, Inc. v. City of San Diego* (2004) 118 Cal.App.4th 808, 814 [13 Cal.Rptr.3d 259].)" (*Wirth, supra*, 142 Cal.App.4th at p. 138.)

The " 'arbitrary, capricious or unsupported by evidence' standard applies to a review of the substantive merit of an administrative agency's quasi-legislative act—that is, whether the agency ' "reasonably interpreted the legislative mandate." ' (*Credit Ins. Gen. Agents Assn. v. Payne* (1976) 16 Cal.3d 651, 657 [128 Cal.Rptr. 881, 547 P.2d 993].)" (*Wirth, supra*, 142 Cal.App.4th at p. 138.) However, when the agency's action depends solely upon the correct interpretation of a statute, a question of law, we exercise our independent judgment. (*Ibid.*, citing *Lewin v. St. Joseph Hospital of Orange* (1978) 82 Cal.App.3d 368, 386–387 [146 Cal.Rptr. 892].) In doing so, "we are guided by the principle that an ' "administrative [agency's] interpretation [of controlling statutes] . . . will be accorded great respect by the courts and will be followed if not clearly erroneous." ' " (*Wirth*, at p. 138, quoting *Yamaha Corp. of America v. State Bd. of Equalization* (1998) 19 Cal.4th 1, 7 [78 Cal.Rptr.2d 1, 960 P.2d 1031]; see also *Spanish Speaking Citizens' Foundation, Inc. v. Low* (2000) 85 Cal.App.4th 1179, 1214 [103 Cal.Rptr.2d 75] [while final responsibility for the interpretation of law rests with courts, the construction of statute by officials charged with its administration is entitled to great weight].)

### B. Interpretation of Section 19849.18

CCPOA remains steadfast in its contention that section 19849.18 requires DPA to automatically grant salary and benefits increases to correctional supervisors employed by the State as a result of the Cohn Award's grant of salary and health benefits increases to rank-and-file members.

"In 1999, Assembly Bill No. 743 . . . was enacted as section 19849.18. Supporters of the bill pointed out that the compensation of supervisors in certain departments was not keeping up with that of the employees they supervised. In some cases, the supervisors actually earned [even] less than the rank-and-file . . . . A promotion to supervisor could actually result in a lesser compensation package, creating recruitment and retention problems. The purpose of the bill was to halt the erosion of a compensation differential between nonunion supervisors and the rank-and-file employees of State Bargaining Units 5 (highway patrol officers), 6 (state correctional officers) and 8 (firefighters), whom they supervised." (*Wirth, supra*, 142 Cal.App.4th at p. 135.) Alternatively stated, the law was enacted to prevent compensation "compaction" between supervisors and rank-and-file employees.

Section 19849.18, the statute at the heart of the present dispute, states: "Supervisors of state employees represented by State Bargaining Unit 5, 6, or 8

*shall receive salary and benefits changes that are at least generally equivalent to the salary and benefits granted to employees they supervise.* For purposes of this section, 'salary' means base pay and shall not be construed to include such forms of compensation as overtime. The benefit package shall be the economic equivalent, but the benefits need not be identical. The determination of the specific benefits that supervisors of state employees represented by State Bargaining Unit 5, 6, or 8 shall receive shall be made through a meet and confer process as defined in Section 3533." (Stats. 1999, ch. 792, § 1, italics added.)

In 2000, Senate Bill No. 1910 (1999–2000 Reg. Sess.) was enacted as section 19849.22, creating a general policy of maintaining a *compensation differential* between supervisory peace officers and the rank-and-file employees they supervise, in order to attract and retain correctional supervisors. (Stats. 2000, ch. 902, § 1.)

 In analyzing what the Legislature contemplated by enacting a statute, our first step is to examine the plain language because words are " 'generally . . . the most reliable indicator of legislative intent.' [Citations.]" (*People v. Gardeley* (1996) 14 Cal.4th 605, 621 [59 Cal.Rptr.2d 356, 927 P.2d 713].) "If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . . [Citations.]" (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) On the other hand, if the language is ambiguous, "courts may employ a variety of extrinsic construction aids, including legislative history, and will adopt the construction that best harmonizes the statute both internally and with related statutes. [Citations.]" (*Summers v. Newman* (1999) 20 Cal.4th 1021, 1026 [86 Cal.Rptr.2d 303, 978 P.2d 1225].)

 We turn first to the wording of section 19849.18, and find no clear, unambiguous language that would require DPA to grant contemporaneous salary and benefits increases to supervisory employees each and every time the rank-and-file employees receive salary and benefits changes. The statute requires *"salary and benefits changes"* that *"are at least generally equivalent* to the salary and benefits" of the employees they supervise. (Italics added.) By definition, "generally" means "in disregard of specific instances and with regard to an overall picture." (<http://www.merriam-webster.com/dictionary/generally> [as of Feb. 11, 2009].) The inclusion of the word "generally" reflects legislative intent that DPA take into account the totality of the circumstances, including the presence or absence of compaction, the size of the existing compensation differential, and the condition of the State's budget to fund increases. To the contrary, CCPOA's approach asks DPA to grant compensation increases with complete disregard for their need or other extenuating circumstances.

Nonetheless, the language is not entirely free from ambiguity. Hence, we consider the available legislative history to ascertain whether CCPOA's interpretation is plausible. The *Wirth* court's analysis of the comprehensive statutory scheme is also instructive and analogously applicable.

### C. Analysis of the Legislative History and Statutory Scheme

Similar to the instant dispute, in *Wirth*, the California Correctional Supervisors Organization (CCSO) sought to compel DPA to afford salary increases for State correctional supervisors in fiscal year 2003–2004, increases CCSO claimed were mandated through its interpretation of section 19849.18. (*Wirth, supra*, 142 Cal.App.4th at pp. 134–135, 139.) Under CCSO's interpretation, DPA was required to grant supervisors lockstep salary changes to those granted to the rank and file. (*Id.* at p. 139.)

"In its original form, Assembly Bill No. 743 (1999–2000 Reg. Sess.) required that supervisors be granted '*the economic equivalent*' of salary and benefits changes accorded to their supervisees, and appropriated 'an unspecified sum from the General Fund to the Controller to fund the salary and benefit[s] changes authorized by these provisions.' (Legis. Counsel's Dig., Assem. Bill No. 743 (1999–2000 Reg. Sess.) as introduced Feb. 24, 1999 . . . .) An appropriation . . . was subsequently inserted to implement the legislation. (Assem. Amend. to Assem. Bill No. 743 (1999–2000 Reg. Sess.) May 28, 1999.) Eventually, the bill was amended to delete any fiscal appropriation, and the phrase '*at least generally*' inserted to modify the term 'equivalent.' (Sen. Amend. to Assem. Bill No. 743 (1999–2000 Reg. Sess.) Sept. 8, 1999.)" (*Wirth, supra*, 142 Cal.App.4th at p. 141, first italics added & fn. omitted.)

"Manifestly, the bill was watered down from its original form so that it did not interfere with DPA's traditional discretion in setting salaries, or require that salaries be increased without legislative appropriation." (*Wirth, supra*, 142 Cal.App.4th at p. 142.) An enrolled bill memorandum to the Governor also confirms that in enacting section 19849.18, the Legislature did not intend to "jeopardize DPA's salary setting authority." (Enrolled Bill Mem. to Governor, Assem. Bill No. 743 (1999–2000 Reg. Sess.) Sept. 24, 1999, p. 1.)

■ Therefore, the *Wirth* court found, and we agree, that the Legislature enacted section 19849.18 " 'not for the purpose of attaining exactitude or identity between the salary and benefits of supervisors and the salary and benefits of the employees they supervise [i.e., rank and file], but for the purpose of avoiding compaction between supervisors' and subordinates' salary levels and maintaining a differential between those salary levels sufficient to recruit and retain supervisors.' " (*Wirth, supra*, 142 Cal.App.4th at

p. 142.) According to *Wirth*, "the Legislature, in calling for 'generally equivalent' compensation changes between the two employee groups, did not intend to strip the DPA of all traditional discretion in fixing the salaries of supervisors and other excluded employees." (*Id.* at p. 141.)

 *Wirth* also discussed the importance of the overall statutory scheme of which section 19849.18 is a part. " '[A]n individual statute must be construed in the context of the comprehensive statutory scheme of which it is a part. Statutes or statutory sections relating to the same subject must be harmonized, both internally and with each other, to the extent possible. Where uncertainty exists, appellate courts must construe provisions in a reasonable, common sense fashion taking into consideration the practical consequences that will flow from a particular interpretation.' " (*Wirth, supra*, 142 Cal.App.4th at p. 140, quoting *Berkeley Center for Independent Living v. Coyle* (1996) 42 Cal.App.4th 874, 878 [50 Cal.Rptr.2d 39]; accord, *Long Beach Police Officers Assn. v. City of Long Beach* (1988) 46 Cal.3d 736, 746 [250 Cal.Rptr. 869, 759 P.2d 504].)

As noted, "[i]n 1981, the Legislature delegated the function of salary setting for nonmerit employees to DPA." (*Wirth, supra*, 142 Cal.App.4th at p. 140, citing § 19815.2 and *Tirapelle, supra*, 20 Cal.App.4th at pp. 1322–1323 & fn. 8.) However, this grant of authority came with a significant caveat. Section 19826, subdivision (a), also enacted in 1981, declares that DPA "shall make *no adjustments that require expenditures in excess of existing appropriations that may be used for salary increase purposes.*" (Italics added.)

 In enacting legislation, the Legislature is presumed to be aware of its prior enactments. (*Wirth, supra*, 142 Cal.App.4th at p. 140; *Golden Day Schools, Inc. v. Department of Education* (1999) 69 Cal.App.4th 681, 691 [81 Cal.Rptr.2d 758].) "In this era of perennial budget deficits, we find it extremely unlikely that section 19849.18, enacted in 1999, would have been intended by the Legislature to trigger automatic salary [and benefits] increases without corresponding budget appropriations earmarked for that purpose. To indulge in such an interpretation would require that we infer that the Legislature intended section 19849.18 to repeal section 19826, subdivision (a) by implication [and this may not be done] without a declaration by the Legislature to that effect." (*Wirth*, at p. 140, citing *Golden Day Schools*, at p. 691.) Instead, " ' "[t]he presumption is . . . 'against repeal by implication where express terms are not used and the statutes are not irreconcilable.' " ' " (*Wirth*, at p. 140, quoting *County of Tulare v. Campbell* (1996) 50 Cal.App.4th 847, 853 [57 Cal.Rptr.2d 902].)

"Because DPA is forbidden by statute from increasing salaries without a legislative appropriation, it must necessarily navigate between implementing

lofty legislative policy goals and not committing the state to spending money that it does not have." (*Wirth, supra,* 142 Cal.App.4th at p. 142.) Thus, the only reasonable method of harmonizing the two statutes is to construe section 19849.18 as taking into account the overall compensation picture, affording DPA sufficient flexibility in maintaining "generally equivalent" compensation differentials so as to avoid compaction, both in times of penury as well as prosperity. (*Wirth,* at p. 140.)

This is certainly no less a concern today, when California faces its greatest public budgetary crisis in decades. To interpret section 19849.18 as CCPOA argues would necessarily require DPA to navigate its fiscal authority directly onto the shoals of budgetary irresponsibility, while ignoring the admonition that it "not commit[] the state to spending money that it does not have." (*Wirth, supra,* 142 Cal.App.4th at p. 142.)

■ Lastly, CCPOA's reading of section 19849.18 also conflicts with the later enacted section 19849.22. Section 19849.22, subdivision (b) provides that "[a] supervisory compensation differential is necessary . . . ," leaving the differential percentage up to DPA's discretion. According to the legislative history, Senate Bill No. 1910 (1999–2000 Reg. Sess.) initially included language that would have established a fixed 10 percent differential, but the Legislature ultimately chose not to, deciding that a general policy of "[a] supervisory compensation differential" was more appropriate. This contemplates a statutory scheme that allows DPA discretion in setting supervisory compensation increases. When two statutes touch upon a common subject, courts must construe them "in reference to each other, so as to 'harmonize the two in such a way that no part of either becomes surplusage.' [Citations.]" (*DeVita v. County of Napa* (1995) 9 Cal.4th 763, 778–779 [38 Cal.Rptr.2d 699, 889 P.2d 1019].) CCPOA's interpretation does not harmonize the two statutes, but instead ignores section 19849.22's mandate.

■ Therefore, it is within DPA's discretionary power to decide what compensation increases comply with sections 19849.18 and 19849.22. DPA's discretion allows it to look past each isolated rank-and-file compensation increase and determine the appropriate differential in light of the overall compensation picture, such as the presence or absence of compaction, the size of the existing compensation differential, the size of the demonstrated recruitment and retention problems among supervisors, and the State's budgetary concerns.

■ Finally, turning to the facts at hand, CCPOA has failed to establish any violation of section 19849.18. CCPOA has presented no evidence to suggest that DPA has maintained an inadequate pay differential, ignored a serious compaction problem, or allowed the rank-and-file members to receive

greater salary or benefits than their correctional supervisors. In fact, the evidence demonstrates the contrary. DPA properly concluded that the supervisors had received other benefits above and beyond those granted to the rank-and-file members such as a substantially higher medical contribution rate ($1,097/month,[4] as compared to $859/month). In light of the fact that supervisors enjoyed an 11.45 percent compensation differential, DPA acted reasonably in only granting a 3.125 percent base pay increase. Under these circumstances, section 19849.18 does not compel DPA to effectuate additional salary and benefits increases.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to respondent.

Reardon, J., and Sepulveda, J., concurred.

---

[4] Although the trial court states this figure as $1,013 per month in its statement of decision, the record suggests that $1,097 is the correct figure. Nonetheless, our decision remains the same using either figure.