Filed 3/1/18 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| CITY OF MONTCLAIR, as Successor Agency, etc., et al.,<br><br>        Plaintiffs and Respondents,<br><br>      v.<br><br>MICHAEL COHEN, as Director, etc.<br><br>        Defendant and Appellant. | C080430<br><br>(Super. Ct. No. 34-2014-80001948-CU-WM-GDS) |
| CITY OF SANTA ROSA, as Successor Agency, etc., et al.,<br><br>        Plaintiffs and Appellants,<br><br>      v.<br><br>MICHAEL COHEN, as Director, etc., et al.,<br><br>        Defendants and Respondents. | C081817<br><br>(Super. Ct. No. 34-2015-80002051-CU-WM-GDS)<br><br>ORDER MODIFYING OPINION<br><br>[NO CHANGE IN JUDGMENT] |

1

THE COURT:

It is ordered that the opinion filed herein on February 6, 2018, be modified as follows:

On page 4, the last two sentences of the partial paragraph that read, "Thus, tax increment financing was a boon to these redevelopment agencies, but it was a fiscal disaster for schools, special districts, and other taxing entities equally dependent on property tax revenue. (*Matosantos, supra*, at p. 248.) For them, property tax revenue was frozen," are modified to read as follows:

> Thus, tax increment financing was a boon to redevelopment agencies. They reaped the benefits of escalating real estate valuations while property tax revenues to entities other than redevelopment agencies were stagnant. In the brutal competition among local entities for property tax revenues, a competition fueled by Proposition 13's constriction of property tax rates, schools, special districts, and other taxing entities were at a disadvantage. (*Matosantos, supra*, at p. 248.)

There is no change in the judgment.


BY THE COURT:


                    RAYE                , P. J.


                    MAURO               , J.


                    HOCH                , J.

2

Filed 2/6/18 (unmodified version)

<u>CERTIFIED</u> <u>FOR</u> <u>PUBLICATION</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| CITY OF MONTCLAIR, as Successor Agency, etc., et al., | C080430 |
| Plaintiffs and Respondents, | (Super. Ct. No. 34-2014-80001948-CU-WM-GDS) |
| v. | |
| MICHAEL COHEN, as Director, etc., | |
| Defendant and Appellant. | |
| CITY OF SANTA ROSA, as Successor Agency, etc., et al., | C081817 |
| Plaintiffs and Appellants, | (Super. Ct. No. 34-2015-80002051-CU-WM-GDS) |
| v. | |
| MICHAEL COHEN, as Director, etc. et al., | |
| Defendants and Respondents. | |

1

APPEAL from a judgment of the Superior Court of Sacramento County, No. 34-2014-80001948-CU-WM-GDS, Timothy Frawley, Judge. Reversed.

APPEAL a from judgment of the Superior Court of Sacramento County, No. 34-2015-80002051-CU-WM-GDS, Shelleyanne Chang, Judge. Affirmed.

Kamala D. Harris and Xavier Becerra, Attorneys General, Douglas J. Woods, Senior Assistant Attorney General, Constance L. LeLouis and Anthony P. O'Brien, Deputy Attorneys General, for Defendant and Appellant in No. C080430.

Best Best & Krieger LLP, T. Brent Hawkins, Iris P. Yang and Kimberly E. Hood for Plaintiffs and Appellants in No. C081817.

Best Best & Krieger LLP, T. Brent Hawkins, Ethan J. Walsh and Kimberly E. Hood for Plaintiffs and Respondents in No. C080430.

Xavier Becerra, Attorney General, Douglas J. Woods, Senior Assistant Attorney General, Tamar Pachter and Paul Stein, Deputy Attorneys General, for Defendants and Respondents in No. C081817.

The question of first impression presented by these consolidated appeals is whether housing authorities that assume the housing functions of their former redevelopment agencies, when a city or county purportedly elect not to, are eligible for the housing entity administrative cost allowance the city or county is not eligible to receive. (Health & Saf. Code, § 34171.)[1] The parties concede that the entities involved in these appeals are a reporting entity of the city or county, a component of the city or county, or are controlled by the city or county. (§ 34167.10.) In *City of Montclair et al. v. Michael Cohen, Director of the Department of Finance, et al.* (Super. Ct. Sacramento County, 2014, No. 34-2014-80001948-CU-WM-GDS) (*City of Montclair*), the trial court found the housing authority was eligible for the allowance; but in *Successor Agency to the Redevelopment Agency of the City of Santa Rosa et al. v. Michael Cohen, Director of*

---

[1] Further undesignated statutory references are to the Health and Safety Code.

2

*the Department of Finance, et al.* (Super. Ct. Sacramento County, 2015, No. 34-2015-80002051-CU-WM-GDS) (*City of Santa Rosa*), the trial court found the statutory scheme rendered the housing authorities ineligible for the allowance. In construing the statutes de novo, as we must (*California Correctional Peace Officers' Assn. v. State of California* (2010) 181 Cal.App.4th 1454, 1460), we conclude the cities and county did not transfer the housing assets and functions to housing authorities unrelated to the cities and counties, and therefore, the Legislature has determined that these housing successors are not entitled to the housing allowance in the same way that the cities and counties, of which they are a part, are ineligible for the allowance. We therefore reverse the judgment in *City of Montclair* granting the housing authority's petition for a writ of mandate and affirm the judgment in *City of Santa Rosa* denying four housing authorities' petition for a writ of mandate.

## BACKGROUND

### Legal Background: The Legislature Giveth and the Legislature Taketh Away

In 1945 the Legislature authorized the formation of community redevelopment agencies and the use of tax increment financing to fund them. (Stats. 1945, ch. 1326, p. 2478 et seq. [Community Redevelopment Act]; Stats 1951, ch. 710, p. 1922 et seq. [codifying and renaming the Community Redevelopment Law, § 33000 et seq.].) "Under this method, those public entities entitled to receive property tax revenue in a redevelopment project area (the cities, counties, special districts, and school districts containing territory in the area) are allocated a portion based on the assessed value of the property prior to the effective date of the redevelopment plan. Any tax revenue in excess of that amount—the tax increment created by the increased value of project area property—goes to the redevelopment agency for repayment of debt incurred to finance the project." (*California Redevelopment Assn. v. Matosantos* (2011) 53 Cal.4th 231, 246-247 (*Matosantos*).)

3

Local governments embraced tax increment financing and by 2011 established nearly 400 redevelopment agencies. *(Matosantos, supra*, 53 Cal.4th at p. 246). This financing scheme produced clear winners and losers. The coffers of redevelopment agencies swelled with 12 percent of all of the property taxes collected across the state. (*Id.* at p. 247; Historical and Statutory Notes, 41A pt. 1 West's Ann. Health & Saf. Code (2014 ed.) foll. § 33500, p. 185.) Thus, tax increment financing was a boon to these redevelopment agencies, but it was a fiscal disaster for schools, special districts, and other taxing entities equally dependent on property tax revenue. (*Matosantos, supra*, at p. 248.) For them, property tax revenue was frozen.

Addressing a state fiscal emergency, and the negative impact of tax increment financing by redevelopment agencies on school finance, the Legislature in 2011 enacted Assembly Bill No. 26 (Stats. 2011, 1st Ex. Sess. 2011-2012, ch. 5), providing for the dissolution of nearly 400 redevelopment agencies then in place. (*Matosantos, supra*, 53 Cal.4th at p. 241.) The legislation ultimately became effective on February 1, 2012. (*Id.* at p. 275.) The Dissolution Law is set forth in Parts 1.8 (§§ 34161 to 34169.5) and 1.85 (§§ 34170 to 34191.6) of Division 24 of the Health and Safety Code. The Legislature made its intent explicit. Section 34167, subdivision (a) states: "This part is intended to preserve, to the maximum extent possible, the revenues and assets of redevelopment agencies so that those assets and revenues that are not needed to pay for enforceable obligations may be used by local governments to fund core governmental services including police and fire protection services and schools. It is the intent of the Legislature that redevelopment agencies take no actions that would further deplete the corpus of the agencies' funds regardless of their original source. All provisions of this part shall be construed as broadly as possible to support this intent and to restrict the expenditure of funds to the fullest extent possible."

Dissolving the agencies may have been accomplished easily by statute, but the winding down of their affairs was more difficult. The Legislature sought to establish a

4

mechanism to ensure that all enforceable obligations of the former redevelopment agencies were paid. But that process is fraught with complexity due to the conjoined membership of the various bodies involved.

While the former redevelopment agencies were legal entities separate from the city or county that created them, the governing body of the sponsoring agency generally governed them. Thus, in many situations, the same decision makers made decisions wearing two hats and, in essence, negotiated with themselves. In other words, decision makers, sitting as members of a city council, entered into reimbursement and funding agreements with the same decision makers, sitting as board members of the redevelopment agency the city created. (See, e,g., *County of Sonoma v. Cohen* (2015) 235 Cal.App.4th 42, 47-48.) The statutory scheme dissolving and winding down the redevelopment agencies thereafter swapped a successor agency for the redevelopment agency, but the decision makers in most cases remain the same—the members of the city council. Attuned to the conjoined nature of many of these decision-making bodies, the Legislature declared that "agreements, contracts, or arrangements between the city or county, or city and county that created the redevelopment agency and the redevelopment agency are invalid and shall not be binding on the successor agency." (§ 34178, subd. (a).)

Unwinding the redevelopment agencies' responsibilities to provide low- and moderate-income housing presented a unique challenge, one the Legislature gave the cities and counties the option to assume or not. Section 34176 provides in pertinent part: "(a)(1) The city, county, or city and county that authorized the creation of a redevelopment agency may elect to retain the housing assets and functions previously performed by the redevelopment agency. If a city, county, or city and county elects to retain the authority to perform housing functions previously performed by a redevelopment agency, all rights, powers, duties, obligations, and housing assets, as defined in subdivision (e), excluding any amounts on deposit in the Low and Moderate

5

Income Housing Fund and enforceable obligations retained by the successor agency, shall be transferred to the city, county, or city and county.

"(2) The housing successor shall submit to the Department of Finance by August 1, 2012, a list of all housing assets that contains an explanation of how the assets meet the criteria specified in subdivision (e). The Department of Finance shall prescribe the format for the submission of the list. The list shall include assets transferred between February 1, 2012, and the date upon which the list is created. The department shall have up to 30 days from the date of receipt of the list to object to any of the assets or transfers of assets identified on the list. If the Department of Finance objects to assets on the list, the housing successor may request a meet and confer process within five business days of receiving the department objection. If the transferred asset is deemed not to be a housing asset as defined in subdivision (e), it shall be returned to the successor agency. If a housing asset has been previously pledged to pay for bonded indebtedness, the successor agency shall maintain control of the asset in order to pay for the bond debt.

"(3) For purposes of this section and Section 34176.1, 'housing successor' means the entity assuming the housing function of a former redevelopment agency pursuant to this section.

"(b) If a city, county, or city and county does not elect to retain the responsibility for performing housing functions previously performed by a redevelopment agency, all rights, powers, assets, duties, and obligations associated with the housing activities of the agency, excluding enforceable obligations retained by the successor agency and any amounts in the Low and Moderate Income Housing Fund, shall be transferred as follows:

"(1) If there is no local housing authority in the territorial jurisdiction of the former redevelopment agency, to the Department of Housing and Community Development.

"(2) If there is one local housing authority in the territorial jurisdiction of the former redevelopment agency, to that local housing authority.

6

"(3) If there is more than one local housing authority in the territorial jurisdiction of the former redevelopment agency, to the local housing authority selected by the city, county, or city and county that authorized the creation of the redevelopment agency." (§ 34176, subds. (a), (b).)

Meanwhile some cities and counties sought through various artifices to preserve unobligated redevelopment funds. The Legislature acted swiftly, imposing reporting and auditing responsibilities on successor agencies and requiring the return of redevelopment funds that had been siphoned off to separate legal entities the cities and counties controlled. Section 34167.5 provides: "Commencing on the effective date of the act adding this part, the Controller shall review the activities of redevelopment agencies in the state to determine whether an asset transfer has occurred after January 1, 2011, between the city or county, or city and county that created a redevelopment agency or any other public agency, and the redevelopment agency. If such an asset transfer did occur during that period and the government agency that received the assets is not contractually committed to a third party for the expenditure or encumbrance of those assets, to the extent not prohibited by state and federal law, the Controller shall order the available assets to be returned to the redevelopment agency or, on or after October 1, 2011, to the successor agency, if a successor agency is established pursuant to Part 1.85 (commencing with Section 34170). Upon receiving that order from the Controller, an affected local agency shall, as soon as practicable, reverse the transfer and return the applicable assets to the redevelopment agency or, on or after October 1, 2011, to the successor agency, if a successor agency is established pursuant to Part 1.85 (commencing with Section 34170). The Legislature hereby finds that a transfer of assets by a redevelopment agency during the period covered in this section is deemed not to be in the furtherance of the Community Redevelopment Law and is thereby unauthorized."

In 2012 the Legislature also expanded the definition of a city, county, or city and county for purposes of Parts 1.8 (Restrictions on Redevelopment Agency Operations) and

7

1.85 (Dissolution of Redevelopment Agencies and Designation of Successor Agencies) of Division 24 of the Health and Safety Code to further restrict city and county's ability to circumvent the intent of the Dissolution Law. The definition of these entities is extraordinarily broad and comprehensive. Section 34167.10 provides in pertinent part: "(a) Notwithstanding any other law, for purposes of this part and Part 1.85 (commencing with Section 34170), the definition of a city, county, or city and county includes, but is not limited to, the following entities:

"(1) Any reporting entity of the city, county, or city and county for purposes of its comprehensive annual financial report or similar report.

"(2) Any component unit of the city, county, or city and county.

"(3) Any entity which is controlled by the city, county, or city and county, or for which the city, county, or city and county is financially responsible or accountable." (§ 34167.10, subd. (a)(1)-(3), added by Stats. 2012, ch. 26, § 5.)

Section 34167.10, subdivision (b) provides six factors to be considered in determining if an entity is controlled by the city, county, or city and county. The section continues with: "(c) For purposes of this section, it shall not be relevant that the entity is formed as a separate legal entity, nonprofit corporation, or otherwise, or is not subject to the constitution debt limitation otherwise applicable to a city, county, or city and county. The provisions in this section are declarative of existing law as the entities described herein are and were intended to be included within the requirements of this part and Part 1.85 (commencing with Section 34170) and any attempt to determine otherwise would thwart the intent of these two parts." (§ 34167.10, subd. (c).)

In the 2011 legislation, the Legislature provided administrative cost allowances to successor agencies, but not to housing successors. (§ 34171.) In 2014 the Legislature made some housing entities, but not others, eligible for a housing administrative cost allowance. It is this statute that is the focus of these consolidated appeals. Section 34171 was amended in relevant part to provide: "(p) From July 1, 2014, to July 1, 2018,

8

inclusive, 'housing entity administrative cost allowance' means an amount of up to 1 percent of the property tax allocated to the Redevelopment Obligation Retirement Fund on behalf of the successor agency for each applicable fiscal year, but not less than one hundred fifty thousand dollars ($150,000) per fiscal year.

"(1) If a local housing authority assumed the housing functions of the former redevelopment agency pursuant to paragraph (2) or (3) of subdivision (b) of Section 34176, then the housing entity administrative cost allowance shall be listed by the successor agency on the Recognized Obligation Payment Schedule. Upon approval of the Recognized Obligation Payment Schedule by the oversight board and the department, the housing entity administrative cost allowance shall be remitted by the successor agency on each January 2 and July 1 to the local housing authority that assumed the housing functions of the former redevelopment agency pursuant to paragraph (2) or (3) of subdivision (b) of Section 34176.

"(2) If there are insufficient moneys in the Redevelopment Obligations Retirement Fund in a given fiscal year to make the payment authorized by this subdivision, the unfunded amount may be listed on each subsequent Recognized Obligation Payment Schedule until it has been paid in full. In these cases, the five-year time limit on the payments shall not apply." (§ 34171, subd. (p)(1)-(2), amended by Stats. 2014, ch. 1, § 2.)

The dispositive issue presented is whether housing authorities which were compelled to assume the housing functions of a former redevelopment agency are eligible for the housing allowance provided by section 34171, subdivision (p) where, as here, the housing authorities report to the city or county for purposes of their comprehensive annual financial report, are a component unit of the city or county, or are controlled by the city or county. The parties concede that each of the housing authorities in these consolidated appeals meet one or more of section 34167.10's criteria.

9

*Factual Background*

The few relevant facts are undisputed. The housing authorities of the cities of Montclair, Santa Rosa, Riverside, and San Jacinto and the County of Sonoma were each designated to be the housing successor for, and each assumed the housing assets and obligations of, the former redevelopment agency in its jurisdiction. The City of Montclair's relationship with its housing authority differs from Santa Rosa, Riverside, San Jacinto, and Sonoma County, but the differences are immaterial under the Dissolution Law.

The City of Montclair did not authorize the formation of its housing authority until after the Dissolution Law was enacted. Though it does not concede the point, the City of Montclair appears to have retained control of the housing authority by appointing the city council as its governing board and designating the city's finance department to prepare its annual budgets.

Santa Rosa, Riverside, San Jacinto, and Sonoma County, by contrast, have a much looser affiliation with their respective housing successors. Although these cities and county argue they do not exert control over their housing successors, each of them is either a component unit of their city or county or must financially report to the city or county for purposes of their comprehensive annual financial report. (§ 34167.10, subd. (a)(1) & (2).)

Following the amendment to section 34171, subdivision (p) to provide housing authorities a housing administrative cost allowance in 2014, each of the housing authorities represented in these consolidated appeals included an allowance in their annual Recognized Obligation Payment Schedule (ROPS). Montclair requested $150,000 as a housing entity administrative cost allowance. Department of Finance (DOF) disallowed the allowance because "the [Housing] Authority operate[d] under the control of the City," and as such it "is considered the City under Dissolution Law" and

10

the city as the sponsor of the former redevelopment agency, is ineligible to receive the administrative cost allowance.

The other entities also listed the housing entity administrative cost allowance on their ROPS: Santa Rosa for $75,000 for 2014 and 2015, Riverside for $289,687, San Jacinto for $75,000, and Sonoma County for $75,000 in 2014 and $150,000 in 2015. DOF denied their requests. DOF reiterated that sponsoring cities and counties are ineligible for the allowance and the Dissolution Law defines "city" to include "any reporting entity of the city for purposes of its comprehensive annual financial report (CAFR), any component unit of the city, or any entity controlled by the city or for which the city is financially responsible or accountable." DOF further explained that the respective housing authority was included in the CAFR and was a component unit of the city or county. Relying on section 34167.10, subd. (c), DOF concluded it was irrelevant that the housing authorities were separate legal entities.

Examining these authorities, two different judges reached opposite conclusions. In *City of Montclair*, the trial court relied on sections 34171, subdivision (p) and 34176 to the exclusion of section 34167.10. The court's analysis was simple. It found that a city or county could elect not to retain the housing functions of its former redevelopment agency pursuant to section 34176, in which case a housing authority was compelled to assume those functions and was entitled to the housing allowance pursuant to section 34171, subdivision (p). The court concluded that as long as the housing authority is a "*bona fide* 'local housing authority' " it is authorized to receive the allowance and section 34167.10 "does not factor into the analysis." Rejecting DOF's argument that the Montclair Housing Authority should not be eligible for the allowance since it was controlled by the city that made the section 34176 election, the court stated that section 34171, subdivision (p)(1) contains no language supporting DOF's position that only "unrelated housing authorities are eligible." The DOF's application of section 34167.10, in the trial court's view, would nullify the city's section 34176 election by abolishing the

11

distinction between the city and the housing authority. Under DOF's reasoning, "even when a city has elected not to retain the housing functions, it may be deemed to have retained the housing functions because the local housing authority is deemed 'part of' the city."

The trial court's analysis of the statutes in *City of Santa Rosa* was diametrically opposed to that of the trial court's in *City of Montclair*. Rather than excluding section 34167.10 as irrelevant, the trial court set out to harmonize the three statutes. In this trial court's view, section 34167.10 plays a pivotal role in achieving the overarching purpose of the Dissolution Law. "Section 34176.10 is clear: a 'city' or 'county' *includes* (1) entities that report thereto, (2) 'component units' thereof, or (3) entities controlled by the city or county, or for which the city or county is financially responsible. [¶] Moreover, Section 34167.10 applies to Section 34176 and 34171, the statutes governing the formation of housing successors and the housing allowance, as these statutes are included in Part 1.85 of the Dissolution Law." Since it is undisputed that the housing successors are listed in the comprehensive financial reports and/or are a component of their respective city/county, "[s]ection 34167.10, subdivision (a) provides DOF the authority to conclude that Petitioner cities and counties did not transfer the 'housing functions' pursuant to Section 34176[, subdivision ](b), and that thus the Housing Successor Petitioners are ineligible for the housing allowance."

It falls to us to determine the meaning of the three central statutes in light of the purpose of the Dissolution Law and well-accepted canons of statutory construction. We therefore must undertake a de novo review of the applicability of section 34171, subdivision (p)'s housing cost allowance in light of section 34176's election and section 34167.10's expansive definition of a city or county.

## DISCUSSION

The housing authorities raise a number of compelling policy arguments. First, they did not volunteer for the job. By law, they were forced to assume additional housing

12

functions when their host city or county elected not to. Second, the responsibilities are enormous and expensive. Third, housing authorities are chronically underfunded and least able to absorb the additional financial burdens. Fourth, housing authorities are distinctly and uniquely separate legal entities from the sponsoring agencies and have been characterized as state agencies. Fifth, because all housing successors assume substantial costs in administering housing functions of the former redevelopment agency, it makes no sense to provide an administrative cost allowance to some of the housing successors and not others. While these arguments are compelling, they are not addressed to the proper branch of government. Legislatures, not courts, consider competing policies and make laws. As a coequal branch of government, the judiciary's role is limited to interpreting the laws the Legislature enacts. Venerable rules of statutory construction aid us, but the policy choices are not for us to make.

Both sides claim adherence to those well-worn rules of statutory construction. We must first turn to the words of the statutes and accord them their plain and ordinary meaning. (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 633.) The words of the statute are the most reliable reflection of legislative intent and when the words are unambiguous we need not turn to any extrinsic sources. (*Hassan v. Mercy American River Hospital* (2003) 31 Cal.4th 709, 715.) Though they cannot both be right, both sides insist that their arguments, though leading to divergent conclusions, are supported by the plain meaning of the statutes.

The plain meaning depends, of course, on which statutes we are construing. In *City of Montclair*, the trial court restricted the plain meaning to only two of the three relevant statutes. The court found the meaning of sections 34171, subdivision (p) and 34176 clear, but ignored section 34167.10 because, in its view, the latter statute does not factor into the analysis. But the court's finding violates the basic tenet that we must harmonize all the parts of the law if possible without violating the overall purpose of the law, distorting the meaning of one part to serve another, or reaching an absurd result.

13

(*People v. Johnson* (2015) 234 Cal.App.4th 1432, 1451.)  We agree with the trial court in *City of Santa Rosa* that all three statutes can be harmonized in service of the greater objective sought to be achieved by the Dissolution Law and equally in service of other fundamental principles of statutory construction.

Consistent with the statutes we quoted in the legal background introduction, the trial court in *City of Santa Rosa* provides an apt summary of the purpose of the Dissolution Law and how DOF's argument is consistent with that purpose:  "Further, a primary purpose of the Dissolution Law was to make monies available to local governments or 'taxing entities.'  (See, [*Matosantos,*] *supra*, 53 Cal.4th at pp. 245-251; see also, Stats. 2011, 1st Ex. Sess 2011-2012, ch. 5, § 1.)  A housing successor's housing allowance is payable from the property tax allocated to the Redevelopment Obligation Retirement Fund.  (See Health & Saf. Code, §§ 34170.5[, subd.] (a); 34171[, subd.] (p).)  Accordingly, each time a housing successor receives a housing allowance, the funds available to allocate to taxing entities are diminished.  DOF's application of Section 34167.10 to its housing allowance determinations comports with the Legislature's intent to preserve available funds for taxing entities."

Application of section 34167.10 to housing allowance determinations is also consistent with the Legislature's later amendments to prevent or reverse city and county attempts to frustrate the purpose of the law by creating separate legal entities to receive tax increment while retaining the control over the entities, and therefore, the tax increment.  Section 34179.5 was added in 2012 (Stats. 2012, ch. 26, § 17) to require audits, also referred to as due diligence reviews.  (See *City of Grass Valley v. Cohen* (2017) 17 Cal.App.5th 567, 574.)  The Legislature made it clear that transfers of assets to city or county alter egos was not permitted and must be returned to the successor agency.

The housing authorities make the imminently reasonable argument that because they are separate legal entities created by state law with a specific mandate to provide low- and moderate-income housing, they are more analogous to independent state

14

agencies than to alter egos of their host cities or counties.  The trial court in *City of Montclair* characterized these housing authorities as "bona fide" in apparent recognition of the difference between well-established housing authorities and sham entities established for the purpose of thwarting the Dissolution Law.  The trial court in *City of Santa Rosa* was equally "sympathetic" to the housing authorities.  But as the latter trial court recognized, we are not the Legislature, and we are servants of the policies legislators enact and the words they choose to reflect their policy choices.

Section 34167.10 is emphatic in its breadth and depth.  The section represents a legislative decision to accelerate the dissolution of redevelopment agencies and redistribute tax increment.  The section begins with the proviso, "Notwithstanding any other law, for purposes of this part and Part 1.85 (commencing with Section 34170), the definition of a city, county, or city and county includes, but is not limited to, the following . . . ."  (§ 34167.10, subd. (a).)  We are therefore bound to forego any other law.  If the explicit breadth of the definition was not enough to foreclose any possible wiggle room, the Legislature appears to have anticipated the arguments advanced here that the housing authorities are separate legal entities.  The section ends:  "(c) For purposes of this section, it shall not be relevant that the entity is formed as a separate legal entity, nonprofit corporation, or otherwise, or is not subject to the constitution debt limitation otherwise applicable to a city, county, or city and county.  The provisions in this section are declarative of existing law as the entities described herein are and were intended to be included within the requirements of this part and Part 1.85 (commencing with Section 34170) and any attempt to determine otherwise would thwart the intent of these two parts."  (§ 34167.10, subd. (c).)

Moreover, the Legislature did not confine the scope of section 34167.10 to entities which are controlled by the city or county.  Subdivision (a)(3) does include "[a]ny entity which is controlled by the city, county, or city and county," but the other qualifiers do not require such a close, and perhaps, factual determination.  Subdivision (a)(1) includes

15

"[a]ny reporting entity of the city, county, or city and county for purposes of its comprehensive annual financial report or similar report,"and subdivision (a)(2) includes "[a]ny component unit of the city, county, or city and county."  (§ 34167.10, subds. (a)(1)-(3).)  While the housing authorities insist they are not controlled by their respective cities or county, they do not dispute that they meet the definition under subdivisions (a)(1) and (2).  We need not address, therefore, any of the factual or legal issues involved in determining whether the cities or county controlled their respective housing authorities.

Because we must harmonize statutes if possible and interpret them to advance, not thwart, the purpose of the law, we reject the notion we should discard section 34167.10 as irrelevant to a housing authority's eligibility for a housing allowance.  The Legislature determined that cities and counties should not recoup the cost of their administrative expenses if they elect to assume the housing functions of their former redevelopment agencies pursuant to section 34176.  The Legislature, as outlined above, has also limited cities and counties' ability to evade provisions of the Dissolution Law by transferring responsibilities to separate, but related, legal entities.  (§ 34167.10.)  The overarching theme of these statutes is to maximize tax increment for the benefit of taxing entities and to limit the city and county's opportunity to retain tax increment, even for administrative costs incurred pursuant to the Dissolution Law.  The various provisions of the law can be harmonized by utilizing section 34167.10's expansive definition of a city or county in determining whether housing authorities which report to a city or county for purposes of their comprehensive annual financial report or similar report or are a component unit of the city or county are entitled to tax increment to pay the administrative costs of assuming the housing functions.  Because the Legislature has constructed a cohesive network of interlocking statutes to ensure that cities and counties do not evade the letter or spirit of the Dissolution Law, we are not at liberty to ignore any of them.  We therefore conclude that section 34167.10 must be construed as part of this scheme.

16

The housing authorities raise a host of objections. They too turn to the words of the statutes and find the application of section 34167.10 to them, not only "nonsensical," but, they claim, it would nullify the election cities and counties are granted by section 34176. Much of the debate focuses on the word "transfer." Section 34176 provides that if the city or county does not elect to retain responsibility for the housing functions all the rights, obligations, assets, etc. associated with the housing activities of the former redevelopment agency must be "transferred" to a housing authority if there is one. But, if the distinction between a city or county and a housing authority is blurred, and a housing authority is deemed to be the city pursuant to section 34176, so the argument goes, the city has no real option to transfer the assets. Thus, according to the housing authorities, section 34176 renders the so-called election illusory. Not so.

The trial court in *City of Santa Rosa* provides an apt response. "Section 34167.10 does not nullify or render meaningless the transfer of the former RDA's housing assets to a housing authority under Section 34176, subdivision (b)(2)/(b)(3) upon the city/county's election not to retain those assets. Whether or not a housing authority is deemed to be part of a city/county pursuant to Section 34167.10, a city/county's decision to retain the former RDA's housing assets under Section 34176, subdivision (a) would result in those housing assets being administered separate from any activities of the housing authority. Conversely, the transfer of the former RDA's housing assets to a housing authority pursuant to 34176, subdivision (b) would enable that housing authority to administer those assets in coordination with its other housing projects and activities." The availability of an administrative cost allowance is an entirely different question; but whether or not a housing authority is eligible for the allowance has no bearing on the transfer of the assets.

The housing authorities insist that the broad definition of a city is a general law and we must give precedence to the later-enacted and more specific terms providing the housing allowance set forth in section 34171, subdivision (p)(1). In subdivision (p)(1),

17

they point out, the word "city" never appears. Nor did the Legislature cross-reference section 34167.10 or in any other manner suggest that the definition of city should apply to the housing administrative cost allowance. In short, the housing authorities condemn the utilization of an unrelated general statute to impose limitations on the Legislature's obvious attempt to provide funding for the chores they have been forced to undertake.

If that was what the Legislature intended, it should have said so. Instead, section 34167.10 says "Notwithstanding any other law . . ." and, as the trial court described it, "clearly deems entities, such as the Housing Successor Petitioners, to be part of their respective cities and counties for purposes of the pertinent Dissolution Law provisions, including those governing the housing allowance. Although the Legislature has amended the Dissolution Law several times, it could have, but did not, amend Section 34167.10 or other related statutes to clearly provide that entities, such as the Housing Successor Petitioners are eligible for a housing allowance."

The housing authorities complain about DOF's inappropriate reliance on legislative history to support its position. DOF suggests that a legislative report noted that only a handful of housing authorities would qualify for the allowance and the $750,000 impact on the budget would be minimal. The trial court in *City of Montclair* characterized DOF's argument as "rank speculation" and the reason the legislators voted for the allowance was unknown. We agree. More importantly, the authorities rightfully point out that legislative history is unnecessary where, as here, the language of the statutes is plain and unambiguous. (*Delaney v. Superior Court* (1990) 50 Cal.3d 785, 798.)

The housing authorities insist that DOF's interpretation of section 34167.10 would render other provisions of the Dissolution Law surplusage and thereby violate another basic canon of statutory construction. The housing authorities frame the surplusage argument this way. "If, as DOF asserts, a city housing authority is part of the city and not a housing authority for purposes of this section, then it would be impossible for there to

18

be more than one housing authority in any jurisdiction, and a city could never make the designation" provided in section 34176, subdivision (b)(3). Subdivision (b)(3), therefore, would be surplusage. We disagree. Under DOF's interpretation, a city can still form a housing authority as a separate legal entity; there is no law to the contrary. If, however, a city wants to insure the housing authority will be eligible for the allowance it must not control its operations, require it to report for purposes of its comprehensive annual financial report, or establish it as a component unit.

Throughout these appeals the housing authorities assert that DOF's interpretation renders the city synonymous with the housing authorities. They accuse DOF of blurring any distinction between the two. To rebut the false argument, they cite a number of functions the city performs that they do not and cannot perform. But they misconstrue DOF's argument. DOF is not attempting to equate the two entities or suggest they perform the same functions. Rather, for purposes of determining whether the authorities are eligible for the housing administrative cost allowance as provided in section 34171, subdivision (p)(1) and cross-referenced to section 34176, DOF argues that even when a city or county purportedly elects not to have retained the housing functions, they are deemed to have retained those functions because the local housing authority is, pursuant to section 34167.10, a part of the city or county. In other words, under the Dissolution Law, what appeared to be the appointment of an independent housing authority under section 34176, subdivision (b) instead amounted to the city or county assuming the role of the housing authority through an entity that reported to it or was a component unit, or that it controlled.

Yet the housing authorities insist that because each of the three sections at issue here were enacted at different times for different purposes, we need not attempt to harmonize them. For the same reason, they assert it is inappropriate to graft on to section 34171's housing administrative cost allowance additional restrictions from section 34167.10. But all of these sections are part of the Dissolution Law; a cohesive law

19

designed to unwind over 400 redevelopment agencies and preserve as much tax increment as possible for the taxing entities which had been starved for revenue. To the extent we can harmonize these provisions, no matter when they were enacted, we must. While the specific objective of each section may have been different, they were all designed to enhance the overarching purpose of the Dissolution Law.

As mentioned at the outset, we need not address the list of inequities the housing authorities argue result from the denial of their requests for the administrative allowance. We acknowledge that successor agencies which assume the burdens of former redevelopment agencies are, in other contexts, eligible for administrative allowances. We do not purport to understand or defend the inequities. But, as the trial court in *City of Santa Rosa* recognized, the inequities are a result of the legislative process, a process during which the Legislature made policy choices with the attendant consequences. The separation of powers doctrine, long a hallmark of our democracy, cannot be violated in the name of a worthier outcome. Consequently, we have construed each provision as a part of an overall legislative scheme and have construed the plain language of the statutes with a view toward serving the overall purpose of the Dissolution Law. (*Gay Law Students Assn. v. Pacific Tel. & Tel. Co.* (1979) 24 Cal.3d 458, 478.) To the extent the housing authorities believe the law should be different, their remedy is to seek redress with the Legislature.

## DISPOSITION

The judgment in *City of Montclair*, case No. 34-2014-80001948-CU-WM-GDS, granting the housing authority's petition for a writ of mandate is reversed and the judgment in *City of Santa Rosa*, case No. 34-2015-80002051-CU-WM-GDS, denying four housing authorities' petition for a writ of mandate is affirmed.  DOF shall recover its costs on appeal.


                                                       RAYE          , P. J.



We concur:



        MAURO       , J.



        HOCH       , J.